UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 12-10196-GAO-1

UNITED STATES OF AMERICA

v.

PHILLIP ASARO,
Defendant.

OPINION AND ORDER
June 20, 2014

O'TOOLE, D.J.

The twelve defendants in this case are alleged to have been involved in a marijuana distribution ring. Defendant Phillip Asaro is charged with conspiracy to distribute marijuana in violation of 21 U.S.C. § 846, being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g), and perjury in violation of 18 U.S.C. § 1623. Law enforcement began targeting surveillance efforts at Asaro in June 2011, when cameras were set up outside his residence at 56 Hurd Street in Malden, Massachusetts. The wiretap of his phone was authorized in October 2011.

A state trooper stopped Asaro's vehicle in Medford on February 23, 2012. The stop resulted in the seizure of 175 pounds of marijuana and a notecard with numerical notations matching the numbers written on each bale of marijuana. The next morning, state agents executed a search warrant at Asaro's residence, seizing fifteen items. Asaro moves to suppress (dkt. no. 145) all items seized and any statements he made to law enforcement, both before and after his arrest on February 23, 2012. An evidentiary hearing was held on the motion.

## I. Findings of Fact

Based on their investigation, agents believed that Asaro and others were using a warehouse in Woburn, Massachusetts, to store bales of marijuana. On February 22, 2012, pursuant to a warrant, federal agents installed a video camera inside the warehouse. The next day, around 6:54 p.m., Asaro was seen to arrive at the warehouse in a pickup truck and enter the building. In addition to the camera, Massachusetts state trooper Orlando Tirella was stationed in the vicinity of the warehouse conducting surveillance. Based on video surveillance, telephone intercepts, and visual observation, agents believed that Asaro was at the warehouse to pick up a quantity of marijuana.

Tirella arranged for another trooper, Brian McKenna, to be on the lookout for Asaro's truck after it left the warehouse and to conduct a traffic stop so that Asaro could be questioned and the truck searched. McKenna had not to that point been involved in the investigation.

McKenna saw and stopped Asaro's truck on Interstate Route 93 a little after 7:00 p.m. The plausible pretext for the traffic stop was that the pickup was following the vehicle ahead of it too closely. Trooper McKenna asked Asaro for his license and registration. McKenna then asked Asaro for consent to search the truck, and Asaro consented.[1] At some point thereafter, Asaro got out of his truck. McKenna asked him what was in the bed of the pickup, and Asaro said there were golf clubs. At McKenna's direction, Asaro opened the tailgate, revealing golf clubs and some plastic bins. At McKenna's request, Asaro opened one of the bins. McKenna observed a large package wrapped in cellophane that was consistent with a distribution-size quantity of marijuana. When McKenna asked Asaro what it was, the defendant said it was marijuana.

---

[1] Asaro testified that he only gave consent to a search of the cab, but I do not credit that testimony. Even if true, the distinction is of no consequence for reasons explained below.

McKenna placed Asaro under arrest, advised him of his Miranda rights, and transported him to the Medford state police barracks. There, after again advising Asaro of his Miranda rights, Trooper Tirella and Special Agent Michael Krol took him to a booking room and uncuffed him. When asked where he was coming from and where he was headed, Asaro told the officers that he had met with a friend in Stoneham and was on his way home. At some point during the conversation, Asaro asked to call his attorney and his wife, but his request was not granted until a significant amount of time had passed.

Trooper Tirella ultimately obtained a search warrant for Asaro's residence. Early the next day, officers executed the warrant and found marijuana, $349,820 in cash, packaging material, a number of cell phones, a loaded 40-caliber firearm, and a drug ledger apparently accounting for over 2,000 pounds of marijuana.

## II. Discussion

Asaro contends that the stop and search of his pickup truck on February 23, 2012, violated his Fourth Amendment rights because (1) he had not committed any traffic violation, (2) he was not given Miranda warnings at the time of the stop, and (3) he did not give valid consent to the search of the back of his truck. He further contends that statements made at the state police barracks after he requested to speak with an attorney should be suppressed. Finally, he argues that because evidence unlawfully obtained was used to support the issuance of the warrant, the fruits of the search of his home should likewise be suppressed.

### A. Motor Vehicle Stop and Search

Regardless of whether there was a valid basis for a traffic stop of the truck, the stop and subsequent search were constitutional because law enforcement agents conducting the investigation had ample probable cause to believe that Asaro was transporting marijuana. See

United States v. Ross, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."); United States v. McHugh, 769 F.2d 860, 865 (1st Cir. 1985) ("Once probable cause existed to believe that contraband was being concealed and illegally transported in the pickup truck, the search could properly have been conducted without a warrant."). The collective knowledge doctrine, under which a court may "impute facts known by one police officer to another police officer engaged in a joint mission," applies here. Morelli v. Webster, 552 F.3d 12, 17 (1st Cir. 2009) (internal quotation marks omitted). See also United States v. Meade, 110 F.3d 190, 193-94 (1st Cir. 1997).

    B.    Statements by Asaro

        *i.*    *Pre-Arrest Statements*

Asaro's position is that his encounter with McKenna when he was pulled over was a de facto arrest and any questioning by McKenna required Miranda warnings to be given. Whether a stop has escalated into a de facto arrest "depends on a number of factors, including, *inter alia*, the location and duration of the stop, the number of police officers present at the scene, the degree of physical restraint placed upon the suspect, and the information conveyed to the suspect." United States v. Rabbia, 699 F.3d 85, 91 (1st Cir. 2012), cert. denied, 133 S. Ct. 1608 (2013) (citations omitted). See also United States v. Chaney, 647 F.3d 401, 408-409 (1st Cir. 2011).

This stop took place on a busy off-ramp from an interstate highway with heavy traffic, only one officer was present, and Asaro was not physically restrained in any way. Cf. United States v. Fornia-Castillo, 408 F.3d 52, 65 (1st Cir. 2005) (affirming district court's finding that investigatory stop did not require Miranda warnings where officer drew gun and used handcuffs,

4

but "stop took place at the side of 'a busy public street with a heavy volume of traffic,'" and only one officer was initially on the scene). The stop "'lacked the coercive element necessary to convert it to something more draconian,' based on the totality of the circumstances." Id. (quoting United States v. Lee, 317 F.3d 26, 32 (1st Cir. 2003)). What transpired may better be described as an investigatory conversation than a custodial interrogation. Miranda warnings were not required, and Asaro's pre-arrest statements will not be ordered suppressed on that basis.

        *ii.      Post-Arrest Statements*

Asaro argues that because Tirella and other officers ignored his requests to contact an attorney, his statements at the barracks and their fruits must be suppressed. Apparently recognizing that any interrogation of Asaro at the barracks after he had asked to contact a lawyer should have ceased, see Edwards v. Arizona, 451 U.S. 477, 484-85 (1981), the government has advised that it will not seek the admission of any of these statements as evidence.

Asaro also claims that because statements made at the barracks were included in the affidavit submitted in support of the application for the warrant to search his residence, the warrant was invalid and the fruits of that search must also be suppressed. That would be true, however, only if, the "offending information" being ignored, what remained in the affidavit was insufficient to establish probable cause. United States v. Dessesaure, 429 F.3d 359, 367 (1st Cir. 2005); accord United States v. Zhen Zhou Wu, 2010 WL 276758, at *4 (D. Mass. Jan. 21, 2010) ("[I]f Wu's border statement . . . is presumed to be inadmissible and is accordingly excised . . . the Court need only find that probable cause existed in the absence of the border statement in order to admit the search of the laptop.").

As discussed below, the warrant application supports probable cause, even without Asaro's statements at the barracks to the effect that he was heading home at the time of the traffic stop.

### C. Search of Residence

Asaro argues that the fruits of the search of his residence in Malden must be suppressed because the warrant application did not support probable cause and contained deliberate factual misrepresentations.

#### i. *Probable Cause*

A warrant application "must demonstrate probable cause to believe that a particular person has committed a crime—'the commission element'—*and* that enumerated evidence relevant to the probable criminality likely is located at the place to be searched—'the nexus' element." United States v. Zayas-Diaz, 95 F.3d 105, 110-11 (1st Cir. 1996) (quoting United States v. Fuccillo, 808 F.2d 173, 175 (1st Cir. 1987)). The Court must give considerable deference to the magistrate judge's determination of probable cause. Id. at 111 (citing United States v. Taylor, 985 F.2d 3, 5 (1st Cir. 1993) ("[T]he duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed.")).

The magistrate had a substantial basis for concluding that probable cause existed that Asaro had committed a drug offense and that relevant evidence would be found at his residence in Malden, without consideration of any of Asaro's statements to police at the barracks. For example, the affidavit averred in paragraph 11 (edited to omit reference to the challenged statements):

> During the course of my investigation of ASARO, I made many observations at ASARO'S residence consistent with narcotics distribution. These observations consisted of people arriving at the residence, parking to the side of the residence and entering for brief periods of time before exiting. Many of these observations consisted of people arriving empty handed and exiting the residence with a bag or object. Based on my training and experience, as well as the training and experience of other investigators with whom I have worked this investigation, I believe these observations were consistent with narcotics transactions and that evidence of this illicit business will be found at ASARO's residence at 56 Hurd Street. I further note that my observations of these activities involving suspected narcotics distribution by ASARO [from] his residence have consistently occurred over the past several months and within the past month. I believe that the ongoing pattern to these observations is further evidence of an ongoing narcotics distribution operation by ASARO from his residence . . . .

(Tirella Aff. at 10 (Hrg. Ex. 3).) The affidavit also detailed a particular incident in which a co-defendant, Michael Napier, had been stopped after such a visit to Asaro's residence. Agents had observed Napier to emerge from the Asaro home carrying a large plastic trash bag. When he was stopped by police the bag was found to contain six pounds of marijuana.

    ii.  *Factual Misrepresentations*

Asaro also requests a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), to determine whether the warrant application deliberately omitted material factual information that would cast doubt on the existence of probable cause.

Asaro claims that Trooper Tirella intentionally misled the court by failing to disclose that the state criminal case against Napier arising from the seizure of the six pounds of marijuana had been dismissed on the district attorney's filing of a notice of nolle prosequi. The claim rests on a non sequitur. The reason for the prosecutor's nol pros is unknown, but its filing does not contradict the affidavit's assertion that Napier had been observed coming out of Asaro's house carrying a bag later found to contain a quantity of marijuana. The affidavit's assertion was about the observations, not the criminal case. In any event, there is no indication that Tirella was involved in the Napier prosecution (the arrest was made by a Trooper Shea), and particularly no

7

basis for inferring that he knew of the nol pros at the time he submitted his affidavit in support of the warrant application.

Asaro is not entitled to a Franks hearing because he has failed to make a "substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that "the allegedly false statement is necessary to the finding of probable cause." Franks, 438 U.S. at 156-57. The request for a Franks hearing is denied, and the evidence seized during the search of Asaro's home will not be suppressed.

### III. Conclusion

For the foregoing reasons, Asaro's Motion (dkt. no. 145) to Suppress is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge